JOSEPH GAMBINO AND CATHERINE GAMBINO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gambino v. Commissioner
Docket No. 30913-83.
United States Tax Court
T.C. Memo 1986-383; 1986 Tax Ct. Memo LEXIS 227; 52 T.C.M. (CCH) 213; T.C.M. (RIA) 86383; August 18, 1986. Geoffrey J. O'Connor, for the petitioners. Laurence D. Ziegler and Thaddeus G. Wozny, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $36,169 in petitioners' Federal income tax for the taxable year ended December 31, 1979, and an addition to tax of $1,808 under section 6653(a). [1] The issue for decision are whether petitioners are entitled to capital loss deductions for worthless stock and/or a worthless non-business bad debt, and whether they are subject to the addition to tax for negligence or intentional disregard of respondent's rules and regulations. For convenience, we have combined our findings of fact and opinion. Petitioners resided in Massapequa Park, New York at the time they filed their petition herein. They timely filed their 1979 Federal income tax return.Catherine Gambino is a party to this proceeding solely because she filed a joint return with *229 her husband, Joseph Gambino (hereinafter "Joseph"). Joseph was the sole shareholder of National Contractors, Inc. (hereinafter "Natural") which was incorporated on April 21, 1978 and was in the business of being a sewing contractor, i.e., it sewed pieces of cloth together to make a finished product. CLHY Imports, Inc. (hereinafter "CLHY"), in which Joseph was a shareholder, was a major customer of Natural. Initially, we need to dispose of some preliminary questions. On their 1979 return, petitioners claimed an ordinary loss of $50,000 in respect of section 1244 stock which was disallowed by respondent. Petitioners have conceded that they are not entitled to a section 1244 loss but claim a $50,000 loss for worthless stock under section 165(g). In addition, they now claim an overpayment of tax for 1979 on the ground that their deduction for a worthless non-business bad debt under section 166(d) is substantially larger than the amount claimed on their return, i.e., $157,567, instead of the $22,534. On that, return, petitioners also reported $121,608 of long-term capital gains from the sale of stock of Converter Carrier Corp. (hereinafter "Converter") with the result that, unless *230 we find that petitioners are entitled to deduct an aggregate amount in excess of $121,608 for the claimed worthless securities and non-business bad debt, we need not address the impact of the short-term capital loss provision of section 166(d)(1)(b). See section 1211(b). Respondent does not contend that Natural did not cease operations in 1979 under circumstances which would entitle a creditor a deduction for a worthless bad debt or a shareholder a deduction for a worthless security. Rather, respondent contends that petitioners have not shown that Joseph had a basis other than zero in his Natural stock or that he in fact advanced any funds to Natural in the capacity of a creditor. Respondent insists that the record herein is devoid of probative evidence in these respects so that any allowance of deductions in accordance with the principles of , would be "unguided largesse." See . See also , affg. on this issue a Memorandum Opinion of this Court; ; *231 . Thus, the issue is whether Joseph's funds were either directly transferred to Natural or expended on Natural's behalf, so as to give him a basis in his stock and/or his claim as a creditor and, if so, the amount thereof.These issues are purely factual and the burden of proof is on the petitioners. ; Rule 142(a). Their resolution depends upon the facts and circumstances of the particular case with the result that we see no purpose to be served by citing and dissecting other cases in the area. Petitioners assert that Joseph provided funds to Natural derived from cash withdrawals from his bank account and from cash which he retained from the $154,798 which he received from his sale of stock on April 30, 1979. The written documentation to support petitioners' assertion (and consequently the claimed deductions) is sparse since most of the books and records of Natural were not available. Such unavailability, however, does not affect petitioners' burden of proof. [2]. They must still sustain that burden by *232 a credible and persuasive reconstruction of the proof that might otherwise be forthcoming if the books and records were available. . Petitioners have sought to accomplish a reconstruction through other written material and the oral testimony of petitioners, the accountant for Natural, and its vice-president and general manager. The written material has serious defects affecting its probative value; not only is it incomplete but its value is undermined by the generality, vagueness, and inconsistency of the oral testimony. As examples of the inconsistency, we note that: (1) Although there is oral testimony that Joseph provided cash for the purchase of machinery by Natural, there is no claim for depreciation, etc. in respect of any machinery on Natural's tax returns for the fiscal years ended April 30, 1979 and April 30, 1980, nor is any machinery listed on Natural's balance sheets as set forth in those returns. [3]
(2) Although petitioners claim that substantial amounts came from petitioners' bank account, we can find only three withdrawals, one of $7,500 on March 1, 1978, one for $5,000 on August 23, 1978, and one *233 of $2,500 on March 6, 1979, that can be correlated with deposits to Natural's bank account [4] at or about the same time. (3) Petitioners' claim that Joseph provided Natural with some $210 - $280 in cash every three to five business days (or $10,000 to $15,000 annually) to purchase thread is in direct conflict with Natural's tax returns which show only $3,391.87 for such purchases during the fiscal year ended April 30, 1979; no such item is specifically listed on its return for the fiscal year ended April 30, 1980. [5]
*234 To the foregoing, we add that it is difficult to accept Joseph's testimony that he retained in cash the bulk of the $154,798 which he received from the sale of the stock on April 30, 1979; his claim that he deposited part of these proceeds in his bank account is supported only by evidence of a deposit of some $40,000 in June, 1979, more than a month after the sale. We also observe that we are not required to accept as gospel the oral testimony of the witnesses, whom we saw and heard. , affg. a Memorandum Opinion of this Court; , affd. without published opinion . The long and the short of the matter is that we conclude, contrary to respondent's claim (see p. 3, supra), that there is sufficient evidence in the record to justify our applying the principle of , subject to the qualification that, in so doing, we are entitled to bear heavily on petitioners who have the burden of proof and whose "inexactitude is of [their] own making." See . *235 As a consequence, based on the record as a whose, we find and hold that Joseph invested $15,000 in the stock of Natural as evidenced by the aforementioned three withdrawals and correlating deposits. In addition, we find and hold that Joseph advanced Natural an additional $12,340.97 in cash for supplies and other expenses of operation [6] with the result that petitioners are entitled to that amount as a worthless non-business bad debt. Petitioners have failed to carry their burden of proof that Joseph invested in, or advanced to, Natural any sums in excess of the foregoing amounts.
*236 The final issue is whether petitioners are liable for the addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. The burden of proof as to this issue is on petitioners. .Petitioners rely upon Joseph's alleged lack of sophistication and his reliance on accountants. While these are circumstances under which such elements may provide an adequate basis for concluding that a taxpayer has carried his burden of proof ( , such is not the case herein. The record indicates that it is highly unlikely that accurate books and records were maintained by Joseph or by Natural (at least with respect to its transactions with Joseph). Cf. , affg. a Memorandum Opinion of this Court. Moreover, the circumstances which apparently led to the concession of the section 1244 issue, namely that there was no attempt to comply with the requirements of that section constitute evidence of failure to meet the requirement of section 6653(a) and the regulations *237 thereunder. Cf. ; , affd. without published opinion . We hold that petitioners have also failed to carry their burden of proof on this issue. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. There is some indication that Natural's books and records, if and to the extent that they existed, were delivered to respondent and could not be located at the time of trial herein. Since there is no indication that respondent deliberately made the books and records unavilable, this circumstance does not excuse petitioners from meeting their burden of proof. . ↩
3. We recognize that Joseph withdraw $14,000 from petitioners' bank account on July 11, 1978 and that this figure coincides with the amount claimed to have been spent for machinery. Perhaps it was so spent but this would prove no more, given the state of the record herein, than that Joseph owned the machinery and allowed Natural to use it. The issue as to whether Joseph personally suffered a loss from the disposition of this machinery is not before us. ↩
4. There is no evidence or claim that Natural or petitioners had more than the one bank account for each stipulated by the parties. ↩
5. Even allowing for a possible difference based on a fiscal year for Natural and a calender year for Joseph, the claimed amount is highly questionable. We also note that Natural only listed $1,142.03 expended for all factory supplies during its fiscal year ended April 30, 1980.↩
6. We arrive at this figure by giving petitioners the benefit of the amounts of expenses for thread and factory supplies shown on Natural's tax returns for fiscal 1979 and 1980 ($3,391.87 and $1,142.03, see p. 6, supra and note 2, supra↩) and the sum of $7,807.07 shown on the accountant's work papers as representing the excess amount of cash invested over the funds supplied by CLHY. In this connection, we note that the record seems to indicate that CLHY was a source of funds; we are unable to determine the extent to which funds furnished to Natural came from that source rather than Joseph.